In re David A. CRABTREE, Debtor.

Francis W. NORWOOD, Trustee of David A. Crabtree, Plaintiff,

v.

David A. CRABTREE; E. Ray Asbury, Postmaster; and Patricia Shelby, Defendants.

Bankruptcy No. 3–83–01116.

Adv. No. 3–84–0009.

United States Bankruptcy Court, E.D. Tennessee.

Feb. 10, 1984.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for plaintiff.

Wilson S. Ritchie, Knoxville, Tenn., Zusmann, Small, Stamps & White, S.J. Zusmann, Jr., Atlanta, Ga., for defendant Crabtree.

Lockridge & Becker, P.C., Jerrold L. Becker, James A. McIntosh, Knoxville, Tenn., for defendant Shelby.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

An involuntary chapter 7 petition, 11 U.S. C.A. § 303 (1979), was filed against the debtor on July 14, 1983. An order for relief was entered on August 22, 1983. Asserting

various constitutional privileges, the debtor has refused to disclose his assets and liabilities.[1]

## I

The trustee's complaint seeking redirection of the debtor's mail, pursuant to 11 U.S.C.A. § 521 and § 542(e) (1979), was filed on January 12, 1984. Alleging that he is unable to identify, collect, and protect assets of the estate, the trustee requests an order directing the defendant Knoxville Postmaster to forward to him all mail addressed to: (1) the debtor at his business, home, or any other address; (2) defendant Patricia Shelby; and (3) some sixty-eight (68) entities in which the debtor purportedly has an ownership interest. However, the trustee does not seek redirection and turnover of any mail from the debtor's attorneys containing privileged communications. Upon the trustee's application and pursuant to Bankruptcy Rules 7012(a) and 9006(c), the court entered an order shortening the time within which to respond to the complaint. Although Patricia Shelby timely filed a motion for a more definite statement, which was granted, the debtor defaulted. The defendant Postmaster filed an answer wherein he states that the United States Postal Service delivers mail by address rather than by name. Hence, addresses are necessary before the Postmaster can comply with any order redirecting mail.

At a hearing on the trustee's motion to enter a default judgment, held on February 2, 1984, the court concluded that there was no justifiable excuse for the debtor's failure to timely respond to the complaint.[2] Although the court determined that a default judgment would be entered against the debtor, testimony was proffered by the trustee to enable the court to determine the appropriate scope of an order redirecting the debtor's mail. A letter dated November 4, 1983, from the debtor's attorney to the trustee's attorney was introduced as an exhibit. This letter identifies fifty-nine (59) entities some or all of which had been included by the debtor in a previous personal financial statement. Based on the debtor's representations in various financial statements, the trustee believes that the debtor has, or had, some ownership interest in each of the sixty-eight (68) entities listed in Exhibit A to the complaint.

## II

The surrender of recorded information relating to property of the estate is among the duties of a debtor in a case in which a trustee is serving. 11 U.S.C.A. § 521(3) (1979). Furthermore, 11 U.S.C.A. § 542(e) (1979) provides:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to disclose such recorded information to the trustee.

On the basis of these statutory provisions the trustee contends he is entitled to redirection and receipt of mail addressed to either the debtor or any of the sixty-eight (68) entities in which the debtor is believed to have, or have had, an ownership interest.[3]

---

1. The trustee's application to hold the debtor in contempt for failure to (i) submit to examination by his creditors and the trustee, (ii) provide information required by Bankruptcy Rule 1007, and (iii) turn over property of the estate, including recorded information, is currently pending before this court. A hearing on the application was held February 9, 1984. Decision was reserved.

2. Mr. Ritchie advised the court that he received a copy of the complaint on January 13, 1984. During the week thereafter, he informed two of the attorneys for the trustee of his intent to seek to withdraw from representation of the debtor. Although the debtor's answer was due on January 20, 1984, and a rough draft was prepared on the same date, the debtor's answer was not filed until January 24, 1984. On the next day Mr. Zusmann agreed to represent the debtor. Mr. Ritchie, however, has not yet been permitted to withdraw in this case.

3. This Memorandum does not address the trustee's contention that defendant Patricia Shelby is the alter ego of the debtor and that her mail should likewise be redirected. A hearing was held on February 10, 1984, to determine wheth-

Describing the duties of a receiver under the Bankruptcy Act of 1898, the editors of *Collier on Bankruptcy* state:

> The receiver must at once secure the bankrupt's mail, either by directing the postal authorities to make delivery to the receiver himself or to a new post office box opened by the receiver. In a business which had accounts receivable, the mail usually contains checks from account debtors in payment of the account and, if the bankrupt is permitted to obtain such checks, the danger is great that they will be cashed and the proceeds spent. Although in theory it is possible to compel the bankrupt through a turnover order to surrender or pay over to the estate all moneys collected by him after the institution of the proceedings, at times it is extremely difficult to enforce such a turnover order. No doubt the bankrupt is compelled to account for all properties that he failed to surrender and all moneys that he received after the institution of the proceedings, but the inability to comply with the turnover order would be a complete defense to any contempt citation that might be issued when he fails to obey the order of a court to turn over the money.

11A *Collier on Bankruptcy* § 5.002[4] (14th ed. 1978).

Some safeguards, however, are necessary to assure protection of a debtor's constitutional rights. Indeed, the Fourth Amendment recites in material part: "The right of the people to be secure in their ... papers, and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. amend. IV. First-class mail is within the scope of protection of this amendment. *United States v. Van Leeuwen,* 414 F.2d 758 (9th Cir.1969), *rev'd* on other grounds, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970).

*In re Benny,* 29 B.R. 754 (D.C.N.D.Cal. 1983) is currently the only reported decision involving the trustee's rights under the Bankruptcy Code to redirect a debtor's mail. The trustee in the *Benny* case effected a redirection of the debtor's mail without either obtaining a court order or providing any notice to the debtor, who was under indictment for both mail fraud and racketeering during the pendency of his bankruptcy case. Though observing that the trustee in the *Benny* case "merely followed a practice which has been uniformly utilized by trustees for decades,"[4] the court concluded that the trustee's right to receive mail did not necessarily include a right to redirect both the business and personal mail of the debtor without notice to the debtor and an opportunity to interpose an objection. The court further recognized that the constitutional right of privacy circumscribes an "interest in avoiding disclosure of personal matters."[5] Other First and Fourth Amendment interests were also noted.

In discussing the scope of relief to which the debtor in *Benny* was entitled, the opinion recites:

> [T]he trustee is currently making all mail available to Mr. Benny's counsel in the criminal action, who returns the business mail to the trustee, an arrangement apparently reasonably satisfactory to all parties.
>
> ▮ In the future, should the trustee, or any of his successors, determine that he must again gain control of the mail addressed to locations other than Red Rock [the debtor's business address] in order to be able to fulfil his duties, he shall provide notice to Mr. Benny that he intends to implement such redirection. If Mr. Benny objects to said redirection, he shall, within five (5) business days from the receipt of said notice, present his objections to the court.
>
> ....
>
> ▮ If the debtor raises no objections, the trustee must submit to the Postal Service, along with his change of

---

er the trustee is entitled to the relief requested as against Patricia Shelby. Decision was reserved.

**4.** *In re Benny,* 29 B.R. at 759.

**5.** *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977).

address request, evidence both of his authority to redirect, e.g., the court order approving his bond, and of notice having been sent to the debtor. He must deliver or forward all nonbusiness mail to the bankrupt promptly.... Furthermore, the trustee shall refrain from opening the nonbusiness mail whenever he can practicably identify it as such by examining the information on the envelope. If the trustee must open the mail in order to ascertain its nature, he shall retain the envelopes and attach them thereto. He shall keep a log of all mail received, both business and personal, entering therein the name and address of the sender, the postmark date and, in the case of business mail which is opened and read, the nature of the communication.

*If the debtor does object to a future redirection, or if the present arrangement proves unsatisfactory to the debtor or the trustee,* and they cannot agree upon an alternate solution, *either may request this court to appoint a neutral administrator or master to review the mail and to separate the personal from the business correspondence.* (Emphasis added and footnotes omitted.)

*In re Benny,* 29 B.R. at 769–70.

In contrast to the *Benny* case the debtor objects to direct receipt and review of his mail by the trustee. Accordingly, the debtor requests the court to appoint a neutral third party to receive and examine his mail, turning over to the trustee only the mail which is related to property of the estate.

The debtor has repeatedly asserted his federal constitutional privilege against self-incrimination in connection with his bankruptcy case. Furthermore, the debtor was recently required to appear before a federal grand jury.

To avoid any appearance of impropriety and to assure due protection of the debtor's constitutional rights, the court finds that it is necessary to appoint a disinterested third party to receive the debtor's mail presently delivered to any of the following addresses: (1) 7240 Wellswood Lane, Knoxville, Tennessee; (2) 7242 Wellswood Lane, Knoxville, Tennessee; (3) Pembroke Apartments, No. 206, 508 Union Avenue, Knoxville, Tennessee; (4) 2136 Plaza Tower, Knoxville, Tennessee (debtor's former business address); and (5) c/o Jerry Crabtree, off Highway 11E, Morristown, Tennessee.

It shall be the duty of this disinterested third party to maintain a record of each item of mail received by him on a daily basis. This record shall include a description of the item of mail (e.g. letter, postcard, small box), the postmark, return address, if any, and the nature of the communication of any business mail which is opened and read. Immediately after proper notation, any mail from an attorney [6] representing the debtor or of a personal nature and not related to property of the estate shall be made available and surrendered to the debtor or one of his attorneys. All other mail addressed to either the debtor or to one of the sixty-eight (68) entities enumerated in Exhibit A to the complaint, c/o any of the addresses in the preceding paragraph, shall be turned over to the trustee or his attorney.

If the trustee discovers that mail of either the debtor or one of the sixty-eight (68) entities is being delivered to an address other than the five specified herein, the trustee must give the debtor notice and an opportunity to object within forty-eight (48) hours if he desires to obtain an order authorizing further redirection. *In re Benny,* 29 B.R. 754 (D.C.N.D.Cal.1983). Likewise, mail addressed to any entity not identified in Exhibit A to the complaint will not be redirected absent proof of the debtor's interest therein and notice and an opportunity to object.

---

**6.** Within four (4) days from the entry of the order accompanying this Memorandum the debtor shall file a list of attorneys, and their addresses, currently or formerly representing him. An identical list shall be furnished by the debtor to the neutral third party as soon as such party is appointed. No mail having a return address of any attorney either currently or previously representing the debtor shall be opened by the neutral third party.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.